**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Aaron Alexander Madden
and Dennis Arthur Burns,

          Plaintiffs,

v.

Chad M. Fuchs, individually and in his
official capacity as a Minneapolis Police
Officer; William C. Woodis, individually and in
his official capacity as a Minneapolis Police
Officer; and the City of Minneapolis,

          Defendants.

Civil No. 04-1448 (DWF/SRN)

**MEMORANDUM**
**OPINION AND ORDER**

---

Frederick J. Goetz, Esq., Goetz & Eckland PA, counsel for Plaintiffs.

C. Lynne Fundingsland and Michael J. Rugani, Assistant Minneapolis City Attorneys, Minneapolis City Attorney's Office, counsel for Defendants.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 8, 2005, pursuant to a Motion for Partial Summary Judgment brought by Plaintiffs Aaron A. Madden and Dennis A. Burns (collectively "the Plaintiffs"). Specifically, the Plaintiffs ask the Court to find as a matter of law that Defendants Chad M. Fuchs and William C. Woodis (collectively "the Officers") unlawfully entered their home. Madden also asks the Court to find as a matter of law that his arrest violated 42 U.S.C. § 1983 and Minnesota state law. Defendants the City of Minneapolis

("the City"), Woodis, and Fuchs (collectively "the Defendants") oppose the motion in all respects. For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment is granted.

## Background

Madden and Burns were roommates living at 5532 29th Avenue South, Minneapolis, Minnesota. Madden and Burns went to a friend's birthday party the afternoon of June 28, 2003. At the party, Madden and Burns swam, ate, and socialized with friends. Madden and Burns also consumed alcoholic beverages at the party.

At around 7:30 p.m., Madden and Burns returned to their home. While Madden gathered his things from the vehicle that they rode home in, Burns began to urinate on a tree. Burns had just finished urinating when Bradley Laudert, a neighbor who happened to be an off-duty Hennepin County jailer, began to shout at him. Burns and Laudert proceeded to get into a shouting match.

During the verbal melee, Burns admits that he put his hand on Laudert's shoulder and picked Laudert's dog up by his leash. Laudert asserts that Burns threatened Laudert and his family with physical harm. Laudert contends that Madden also became verbally involved in the confrontation. Eventually Madden and Burns left the scene to return to their home. Laudert and his family also left the area. At some point after the confrontation ended, Laudert telephoned the Minneapolis Police Department.

City of Minneapolis Police Officers Fuchs and Woodis were on patrol in South Minneapolis when they heard a "fight call" over their police radio. The Officers began to drive to the scene of the dispute, but were flagged down by Laudert along the way. Laudert described the altercation to the Officers, told the Officers that Plaintiffs had entered the house at 5532 29th Avenue South, and

2

identified Burns as the primary assailant by describing the red shirt Burns was wearing at the time of the incident. Based on Laudert's description of events, the Officers determined that Burns should be cited or arrested for the misdemeanor offenses of fifth degree assault and indecent conduct.

The Officers proceeded to the house that Plaintiffs had entered in order to obtain statements from Plaintiffs and issue a citation for the incident. Fuchs went to the front door and Woodis went to the back door. Fuchs knocked on the door and announced himself as a police officer. While Fuchs was knocking at the door, he could see Burns moving around inside the house. Woodis was also looking into the house from a kitchen window located at the rear of the house. Woodis asserts that he tapped on the glass of the window to get Burns' attention, but that Burns walked away from the window when he realized that Woodis was standing outside of the house. Both of the Officers contend that they could hear obscenities being yelled at them from inside the house.

The Officers proceeded to meet at the rear of the house to determine what course of action they should take. At that time, the Officers contend that Burns appeared outside of the house holding a video camera. Burns allegedly pointed the camera at the Officers and yelled profanities at them. Plaintiffs deny that either Madden or Burns ever left the house during their confrontation with the Officers.

According to the Officers, they told Burns that he was under arrest. In response, Burns allegedly began to run toward the back door of the house. Once inside the house, Burns allegedly began to lock the door. As Burns was allegedly locking the door, the Officers kicked in the door. The Officers claim their warrantless entry of the house was lawful under the doctrine of "hot pursuit."

3

After the Officers entered the house, they attempted to arrest Burns. Fuchs asserts that Burns struggled with him in order to avoid being handcuffed. Woodis contends that he assisted Fuchs in the arrest of Burns until Madden grabbed onto his [Woodis'] arm. Woodis claims that Madden fled to the basement of the house once he had come into contact with Woodis. In contrast, Madden contends that once Woodis entered the house, Woodis punched Madden in the face sending him tumbling down the stairs to the basement.

Once Burns was handcuffed, Woodis asserts he went into the house's basement to arrest Madden. Woodis contends that Madden assumed a "fighting stance" once he was told he was under arrest. Woodis asserts that in response to Madden's actions, he [Woodis] punched Madden in the face. Woodis also admits that he delivered a second blow to Madden's torso to force Madden to comply with his [Woodis'] attempts to use handcuffs. Madden, on the other hand, contends that he had just gotten back on his feet when Woodis charged down the basement steps and punched Madden in the head at least twice.

Burns was charged with Fifth Degree Assault Fear and Obstructing the Legal Process. Madden was charged with Disorderly Conduct and Obstructing the Legal Process. On January 13, 2004, Burns pleaded guilty to both charges before Judge LaJune Thomas Lange in Hennepin County District Court. Madden was prosecuted for Obstructing the Legal Process, but the Disorderly Conduct charge was dismissed. *State of Minnesota v. Aaron Alexander Madden,* Court File No. 03-044267 (Feb 9, 2003). Over a three-day period, January 13-15, 2004, an evidentiary hearing in the criminal case against Madden took place. Fuchs, Woodis, Madden, and Burns all testified at the hearing. Judge Lange presided over the hearing.

On February 9, 2004, Judge Lange issued an order dismissing the Obstructing the Legal Process charge brought against Madden. In the Conclusions of Law portion of Judge Lange's order, the Judge stated:

> The fourth amendment does not allow police to make warrantless and nonconsensual entries into a suspect's home to make a misdemeanor arrest for a reported crime. The police are allowed to make a warrantless entry into a dwelling, for a felony crime if there is probable cause and exigent circumstances. *Payton v. New York,* 445 U.S. 573, 576 (1979). The evidence clearly established the defendants did not resist the authority of the police once the warrantless entry was made.

(Affidavit of Frederick J. Goetz, ¶ 2, Ex. 8 ("Amended Rasmussen Findings") at 4.)

Plaintiffs now move for partial summary judgment based on the doctrine of collateral estoppel as to their claim that Defendants illegally entered Plaintiffs' home and Madden's claim that he was unlawfully arrested by the Officers. Defendants contend that collateral estoppel is not applicable because: (1) Fuchs and Woodis were not parties or in privity with a party in the criminal proceeding; (2) the issues present in this case are not identical to those decided in Madden's criminal proceeding; (3) no final judgment was entered on the issues present in this case; and (4) Fuchs and Woodis have not had the opportunity to call witnesses or cross-examine Madden.

## Discussion

**I.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inference that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).

However, as the Supreme Court has stated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## II. Applicability of the Doctrine of Collateral Estoppel

Collateral estoppel precludes the relitigation of issues that are identical and have already been litigated by the parties in a prior action. *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn. 1982) (citation omitted). Collateral estoppel may be applied where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Id.* at 704 (citing *Victory Highway Vill., Inc. v. Weaver,* 480 F. Supp. 71, 74 (D. Minn. 1979)).

Plaintiffs assert that Defendants should be estopped from relitigating Judge Lange's findings that the Officers unlawfully entered Plaintiffs' residence and that Madden did not resist the authority of the

Officers once they entered Plaintiffs' residence. Plaintiffs contend that each of the elements of the doctrine of collateral estoppel are present in this case.

Plaintiffs assert that the judgment entered in Madden's criminal proceeding was a final adjudication of the merits of at least some of the claims in this case. Plaintiffs note that the state court conducted a three-day evidentiary hearing in this matter and that the City chose not to appeal the court's decision. Plaintiffs also contend that the Officers are in privity with the City as their interests are identified with the City and the City effectively represented Woodis's and Fuchs's interests. Finally, Plaintiffs contend that Defendants were given a full and fair opportunity to be heard on the issues at the three-day evidentiary hearing as both of the Plaintiffs and Officers testified at the hearing.

Defendants contend that the Officers may be entitled to qualified or official immunity. Defendants note that the immunity issues have not been heard by a court. Qualified immunity shields government officials as well as private individuals from civil liability under §1983. *See Wilson v. Layne*, 526 U.S. 603, 614 (1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists. *See Goff v. Bise,* 173 F.3d. 1068, 1072 (8th Cir. 1999) (citing *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)). First, the plaintiff must assert a violation of a constitutional right. *See id.* Second, the alleged right must be clearly established. *See id.* Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established right. *See id.*

Under Minnesota law, public officials are automatically entitled to official immunity from state law claims such as false arrest and false imprisonment when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *See Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990); *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1998). Thus, to determine whether official immunity is available in any given context requires a determination of whether the alleged acts were discretionary or ministerial and whether the alleged acts were malicious or willful. *See Davis v. County of Hennepin*, 559 N.W.2d 117, 122 (Minn. App. 1997).

Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited. This is an objective inquiry that examines the legal reasonableness of an official's actions. *See State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). An officer does not commit a willful and malicious wrong unless the officer relies on information that the officer knows to be false. *See Johnson v. County of Dakota*, 510 N.W.2d 236, 240 (Minn. App. 1994). To overcome a defense based on official immunity, a plaintiff cannot rely on "bare allegations of malice"; rather, plaintiff must present specific facts evidencing bad faith. *Harlow*, 457 U.S. at 817.

Defendants also contend that none of the factors necessary for the application of collateral estoppel are present in this case. First, Defendants assert no final adjudication on the merits has occurred. Second, Defendants contend that they were not in privity with the State of Minnesota as they did not have an opportunity to present their own evidence as to liability on the civil claims at the

criminal proceeding.  Third, Defendants contend that they were not given a full and fair opportunity to be heard on the issues.

Based on a review of the record, the Court finds that summary judgment is appropriate with regard to Counts I, II, and XI of Plaintiffs' Complaint.  Defendants focus most of their memoranda on the contention that the Officers may be entitled to qualified or official immunity.  However, the Court finds that as a matter of law the Officers are not entitled to either form of immunity.

Generally, the Court agrees with Defendants that plaintiffs will not be able to utilize the doctrine of collateral estoppel to bar defendants from litigating liability in civil cases when criminal charges have been dismissed.  The Court also agrees with Defendants that Judge Lange's finding that both Burns and Madden did not resist arrest was in error.  Judge Lange determined that Burns did not resist the Officers, despite Burns having previously pleaded guilty to resisting arrest.

As to the Obstructing the Legal Process charge brought against Madden, the only stated basis for which the charge was brought was that Madden allegedly grabbed Woodis' arm while Woodis attempted to restrain Burns.  Judge Lange found that the alleged factual basis upon which the charge was brought did not occur.  A finding to that effect negates any immunity defenses that the Officers might otherwise be able to rely upon.  Simply put, if Madden never grabbed Woodis' arm, the Officers had no reasonable basis upon which to base his arrest.

Likewise, the Court finds that no reasonable officer would have entered the Plaintiffs' residence without a proper warrant.  The Officers admitted that they entered Plaintiffs' residence to arrest Burns for a misdemeanor level offense that occurred outside of their presence.  The Court outright rejects the notion put forward by Defendants that the "hot pursuit" exception to the Fourth Amendment's bar on

9

warrantless entries into the home of individuals is applicable here.  The Court finds that the Officers' actions were so objectively unreasonable that the Officers are not entitled to the immunities.

The Court also rejects the remaining arguments put forth by the Defendants regarding the absence of factors necessary for the application of the doctrine of collateral estoppel.  The Court's determination that the Officers are not entitled to the immunities negates their argument that no final adjudication of the issues has taken place because the only issue that they claimed had not been considered was that of the immunities.

The Court also finds that privity exists between this particular group of Defendants and the State of Minnesota and that Defendants had a full and fair opportunity to be heard on the issues.  The City has not suggested that either of the Officers was acting outside of the scope of their employment, and the interests of all of the parties appear to have been well represented by an Assistant Minneapolis City Attorney at the three-day evidentiary hearing.  The Court has also reviewed the transcript of the hearing and finds that each of the parties that would be expected to testify in the present matter were called to give testimony at the hearing.

As previously stated, the Court agrees with Defendants that in most cases plaintiffs will not be able to utilize the doctrine of collateral estoppel to bar defendants from litigating liability in civil cases when criminal charges have been dismissed.  However, the Court finds that the doctrine of collateral estoppel may be invoked by Plaintiffs in this case given the nature of the charge that was dismissed and the extensive evidentiary hearing on the matter.  Thus, the Court grants Plaintiffs' Motion for Partial Summary Judgment based on its finding that all of the factors necessary to the application of the doctrine of collateral estoppel are present.

**Conclusion**

Although the Court has granted summary judgment with regard to some of Plaintiffs' claims, the Court believes that Plaintiffs will have some difficulty in convincing a jury of their damages in light of Plaintiffs' own conduct leading up to, and at the time of, the confrontation between the Officers and Plaintiffs. Thus, the Court believes it is in the best interests of the parties to negotiate a resolution of this dispute. As the parties may already be aware, Magistrate Judge Susan Richard Nelson is available to assist in the negotiation of a settlement should the parties find such services to be helpful. If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296, or Beverly Riches, Calendar Clerk for Magistrate Judge Susan Richard Nelson, at 651-848-1200.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 13) is **GRANTED.**

Dated: May 17, 2005          s/Donovan W. Frank
                             DONOVAN W. FRANK
                             Judge of United States District Court